We're here for the last case on the calendar, Hasan-Nayem v. U.S. Attorney General. Counsel for petitioner, are you ready? You have ten minutes for your main argument and five minutes for rebuttal. Thank you. Good morning, ladies and gentlemen. Thank you for your support. I'm Thomas Osushi. I represent Mr. Hasan-Nayem. I'm a petitioner for the review of a D.I.A. decision which dismissed his appeal of an immigration judge's decision, which denied his application for relief, including most notably, politically, put him in asylum. As is the case with probably about 90% of asylum cases, this is a case in terms of credibility. And I would like to just spend a moment talking about credibility in general terms, as I think it affects issues in this case. If credibility is the most essential element, as I think it is, for establishing eligibility for asylum, then facts are the building blocks for any credibility assessment. And by far the most fundamental consideration in assessing those facts is the consistency of those facts. And consistency has a very, very prominent place in the statute of post-real ID, the governing credibility of asylum cases. Most notably, the phrase, consideration of the internal consistency of such statements with other evidence of record, any inaccuracies or falseness of such statements without regard to whether an inconsistency, accuracy, or falseness goes to the heart of the claim. This, on its face, appears to give the fact finder a liberal, wide range of bases for denying asylum based upon any inconsistency in the record. Can I ask you to address something that seems like it may be dispositive to me on the credibility determination, and that's the immigration judge's discussion of demeanor. So the immigration judge said that he looked at this person while testifying, that he was evasive and non-responsive. Setting aside all of the inconsistencies, I think you make some decent arguments that some of the things that the immigration judge said were inconsistent may not be entirely inconsistent. What do we do with the fact that the immigration judge said, hey, I saw the guy looking at me. He was evasive. He was non-responsive. He kept answering questions after his answer had already happened. He was talking even while the immigration judge was talking. He was just sort of, he had prepared answers, canned answers. What do we do with that determination by the immigration judge? Well, Your Honor, I did address this in the brief briefly. The sections of the transcript which the board references on your page don't seem to add to what it is that the immigration judge is saying about demeanor. I'd also note, I didn't raise this in the brief, but this hearing was a little bit, let's call them technical difficulties in terms of everyone was appearing by telephone. There were interruptions at the facility where my client was being housed. Issues with voices being dropped. And to me, the immigration judge, this is argued below in the official appeal brief, the judge was not very, I mean, she used some language relating to demeanor. She wasn't very specific. I mean, I'll just read you what, I mean, let me get you to specifically address what the immigration judge said on that. That may be the way to go about this. Here's what the immigration judge said first, that Hassan Naeem, maybe I'm pronouncing that right, gave the impression that he was recalling words that had been memorized. And if you actually look at the record on page 187, during the hearing, the immigration judge actually said, raised a question about whether he was using sort of hidden cues to have his testimony. What do you say about that? Well, what I say about that is that the colloquy on page 187 belies a kind of a baseline distrust that the immigration judge had towards my client, kind of pulling him out based on some suspicion that he was reading off the crip notes. And that, actually, that request by the judge I found actually kind of disturbing. Rather than altering the judgment that the judge made in that majority manner, it kind of, to me, suggests a predisposition to not believe on anything. And I think the fact that, you know, her opinion, I think I mentioned, cited ten different reasons varying degrees of accuracy and urgency, I think sort of confirms that inherent suspicion that was there. I mean, maybe you're right about that, but I guess what would I, what are we as a reviewing court who did not participate in this hearing supposed to say about the judge who said and watched this person testify and even mention this stuff on the record at the trial? I mean, how are we supposed to overturn that credibility determination? Are we supposed to just say, well, it seems like the judge is unlikely to believe people who testify and therefore, I mean, I just don't, what would our, let's say we want to overturn that credibility determination. I mean, what would we say in an opinion to possibly overturn that credibility determination? Well, Your Honor, if you go back to the taxpayer provision, it would involve a consideration of the totality of the circumstances. And I think in this case, one could argue that even though there was a demeanor finding entered, that demeanor finding was rather bare bones, and it was entered by a judge who seemed to be exposed to not believing my client. And that, those elements of totality of the circumstances may seem a perfectly valid way to address and minimize a significantly demeanor finding, not to just discount it. Counsel, would you like to save your remaining time for rebuttal? I just, just a couple of things, Your Honor. As the court has noted, a lot of the arguments in my brief had to do with credibility. And I just wanted to say that in terms of this prearrangement that the judge seems to have, an intervention judge seems to have in terms of making any characteristic of a case finding, it would already make sense that that language is in tension with other language in the statute, specifically totality of the circumstances. And I would like to say that in cases that both argued before the immigration judge and also in appeal, that the government tends to emphasize the free reign that a judge has, whereas I think the qualified language in tension with that implies, or implicates rather, the accuracy of the counting of facts of the government and also the potency of the observations that are made about this fact. And as I think I pointed out in my brief, those aspects of this decision, of this agency's decision, are highly suspect. Counsel, thank you. Your time has expired and you have five minutes remaining for rebuttal. Thank you. Mr. Hartman, are you ready to proceed? I am, Your Honor. Thank you. Wait, is Judge Kerns still on? He's dropped. Oh, he has dropped? Okay. Is the video off or is he on? I don't know. I didn't see him on my screen for a lot of the argument, I'm sorry, Your Honor. Excuse me, Your Honor. Yes, Anthony? Judge Kerns dropped on the floor. We're trying to get him back on. Okay. Anthony, you know what we'll do is we'll take a five-minute recess and Valerie, you can get us when Judge Kerns has returned. Okay? Thank you. All rise.